# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **HENRY J. BLOOMER,** ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 2:06cv00059 |
| ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of Social Security,**[1] ) | By: PAMELA MEADE SARGENT |
|     Defendant ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Henry J. Bloomer, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this case pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Bloomer filed his application for DIB on or about February 18, 2005, alleging disability as of December 1, 1994, based on a back and neck injury, arthritis, a shoulder and arm injury, left leg pain and numbness and degenerative disc disease. (Record, ("R."), at 44-46, 49, 68, 129.) The claim was denied initially and upon reconsideration. (R. at 33-35, 38, 40-42.) Bloomer then requested a hearing before an administrative law judge, ("ALJ"). (R. at 43.) The ALJ held a hearing on February 15, 2006, at which Bloomer was represented by counsel. (R. at 124-36.)

By decision dated April 21, 2006, the ALJ denied Bloomer's claim. (R. at 21-25.) The ALJ found that Bloomer last met the disability insured status requirements of the Act for DIB purposes on December 31, 1994.[2] (R. at 23.) The ALJ found that Bloomer had not engaged in substantial gainful activity at any time relevant to the decision. (R. at 23.) The ALJ also found that, through the date last insured, the medical evidence established that Bloomer suffered from a severe impairment, namely

---

[2]Thus, for DIB purposes, it must be determined whether Bloomer was disabled at some point on or prior to December 31, 1994.

degenerative disc disease, but he found that Bloomer did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) The ALJ found that Bloomer's allegations were not totally credible. (R. at 23-24.) The ALJ found that Bloomer retained the residual functional capacity to perform light work.[3] (R. at 24.) The ALJ found that Bloomer was unable to perform his past relevant work. (R. at 24.) Based on Bloomer's age, education, work history and residual functional capacity and the Medical-Vocational Guidelines, ("the Grids"), found at 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ found that Bloomer was not disabled under the Act at any time through December 31, 1994, and was not eligible for benefits. (R. at 25.) *See* 20 C.F.R. § 404.1520(g) (2006).

After the ALJ issued his decision, Bloomer pursued his administrative appeals. (R. at 15), but the Appeals Council denied his request for review. (R. at 6-9.) Bloomer then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2006). This case is before the court on Bloomer's motion for summary judgment filed March 22, 2007, and the Commissioner's motion for summary judgment filed April 18, 2007.

## *II. Facts*

Bloomer was born in 1943, (R. at 44), which, on his date last insured, classified him as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d)

---

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R § 404.1567(b) (2006).

(2006). Bloomer has a tenth-grade education. (R. at 53, 127.) Bloomer has past work experience as a self-employed carpenter. (R. at 50, 76.)

In rendering his decision, the ALJ reviewed medical records from Dr. Peter Sitaras, M.D.; Dr. Victor Rossi, M.D.; Pennington Pharmacy; and Dr. Gregory Corradino, M.D. Bloomer's attorney also submitted medical records from Lee County Community Hospital and Dr. Patrick A. Molony, M.D., to the Appeals Council.[4]

In October 1984, Bloomer injured his back at work in a slip and fall accident. (R. at 77.) Bloomer received conservative treatment until 1985, when a myelogram showed a herniated disc at the L4-5 level of the lumbar spine. (R. at 77.) On February 4, 1986, Dr. Peter Sitaras, M.D., performed a lumbar diskectomy. (R. at 78-80.) Dr. Sitaras noted that Bloomer went to the recovery room in satisfactory condition. (R. at 80.)

The record does not contain any medical evidence between 1986 and August 13, 1992.

Bloomer did not notify his medical doctors of any back or neck problems until October 1995, when he reported to have been involved in a motor vehicle accident in

---

[4]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 6-9), this court also should consider this evidence in determining whether substantial evidence support the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

which his car was rear-ended.[5] (R. at 123.) Bloomer then claimed to have had neck and back pain since the accident. (R. at 121.) It was not until the motor vehicle accident that Bloomer informed his family physician, Dr. Molony, of any neck or back pain. (R. at 121.) On October 16, 1995, Dr. Molony assessed Bloomer to be doing better, with his neck symptoms improving. (R. at 121.) On October 30, 1995, Dr. Molony also noted that Bloomer had hurt his back at work and that he was progressing. (R. at 121.) Bloomer next saw Dr. Molony in November 1996, at which time he made no complaints of back or neck pain. (R. at 120.)

On March 25, 2005, an MRI of Bloomer's lumbar spine showed chronic disc disease, osteophytes, a bulging disc and degenerative changes at multiple levels. (R. at 88-89.) No tumorous process or an acute compression was noted. (R. at 89.)

In April 2005, Dr. Gregory Corradino, M.D., reviewed Bloomer's x-rays and medical history and determined that Bloomer had a herniated lumbar disc with moderate compression and spondylosis. (R. at 87-89.) Dr. Corradino recommended a lumbar myelogram; however, Bloomer was not willing to consider any further surgical procedure. (R. at 87.)

On November 29, 2005, Dr. Victor Rossi, M.D., completed a medical assessment indicating that Bloomer could not lift and/or carry any amount of weight. (R. at 85-86.) He found that Bloomer could stand and/or walk for one hour in an eight-hour workday and that he could do so for up to 30 minutes without interruption. (R.

---

[5]The record is void of any intervening back problems or complaints until the October 1995 motor vehicle accident. (R. at 123.) The record also shows that Bloomer did not take pain medication on a regular basis until January 2000. (R. at 82.)

at 85.) Dr. Rossi found that Bloomer could sit for a total of only one hour in an eight-hour workday and that he could do so for up to 15 minutes without interruption. (R. at 85.) He indicated that Bloomer could occasionally stoop, kneel and crawl, but never climb, balance or crouch. (R. at 86.) On March 30, 2005, Dr. Rossi saw Bloomer for complaints of left leg pain. (R. at 108-09.) An MRI of Bloomer's lumbar spine showed severe degenerative joint disease and degenerative changes at multiple levels. (R. at 101-02, 109.) Dr. Rossi also noted that a small herniation was possibly present between the L2-L3 level of the spine. (R. at 101-02, 109.) Spinal stenosis was noted of a mild to moderate degree, as well as scoliosis. (R. at 101-02, 109.) On April 21, 2005, after consulting a neurosurgeon, Bloomer was advised to undergo surgery. (R. at 108.) Dr. Rossi reported that Bloomer's muscle strength in his left leg was diminished to 3/5. (R. at 108.) Dr. Rossi diagnosed sciatic nerve compression, herniated disc, chronic obstructive pulmonary disease, tobacco abuse and degenerative joint disease. (R. at 108.)

### *III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2006); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review

does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2006).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §1382c(a)(3)(A)-(B) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall v. Harris*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated April 21, 2006, the ALJ denied Bloomer's claim. (R. at 21-25.) The ALJ found that Bloomer last met the disability insured status requirements of the Act for DIB purposes on December 31, 1994. (R. at 23.) The ALJ also found that, through the date last insured, the medical evidence established that Bloomer suffered from a severe impairment, namely degenerative disc disease, but he found that Bloomer did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) The ALJ found that Bloomer retained the residual functional capacity to perform light work. (R. at 24.) The ALJ found that Bloomer was unable to perform his past relevant work. (R. at 24.) Based on Bloomer's age, education, work history and residual functional capacity and the Grids, the ALJ found that Bloomer was not disabled under the Act at any time through December 31, 1994, and was not eligible for benefits. (R. at 25.) *See* 20 C.F.R. § 404.1520(g) (2006).

-7-

Case 2:06-cv-00059-JPJ-PMS   Document 20   Filed 06/26/07   Page 7 of 14   Pageid#: 74

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

Bloomer argues that the ALJ erred by failing to find that he met or equaled the listing for disorders of the spine found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. (Memorandum In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 7-8.) Bloomer also argues that the ALJ erred by failing to

discuss the weight, if any, he gave to his treating physicians, Dr. Rossi and Dr. Molony. ("Plaintiff's Brief"), at 8-11.) Bloomer further argues that the ALJ erred by failing to properly assess the effect of pain on his ability to perform substantial gainful employment. (Plaintiff's Brief at 11-12.)

Bloomer argues that the ALJ erred by failing to find that he met or equaled the listing for disorders of the spine found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04.[6] Based on my review of the record, I disagree. Section 1.04 requires that the disorder result in *compromise of the nerve root or the spinal cord* with either (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or motor loss and, if there is involvement of the lower back, positive straight leg raising test; or (2) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or (3) lumbar spinal stenosis resulting in psuedoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in § 1.00(B)(2)(b).

The record shows that Bloomer first injured his back during a slip and fall

---

[6]Bloomer alleges a disability date of December 1, 1994. (R. at 44.) Bloomer last met the disability insured status requirement of the Act for DIB purposes on December 31, 1994. (R. at 23.) Thus, the time period at issue is December 1, 1994, through December 31, 1994.

-9-

accident at work in 1984, and 16 months later, he underwent a lumbar diskectomy. (R. at 77-80.) Bloomer worked after his surgery and did not allege disability until December 1, 1994. (R. at 44, 48.) The record also shows that Bloomer performed work after December 31, 1994, his date last insured. (R. at 111, 121, 128.) There are no medical records between Bloomer's surgical disc repair and December 31, 1994, which even mention back problems. In fact, there are no medical records from December 1, 1994, through December 31, 1994. The record shows that Bloomer's next complaint of back problems after his 1986 surgery did not occur until 10 months after his date last insured. (R. at 123.) At that time, Bloomer's back and neck pain complaints were a result of a motor vehicle accident. (R. at 123.) Treatment notes reflect that Bloomer had a reduced range of motion, and that he had again "[h]urt back at work and [was] progressing." (R. at 121.) The record also shows that Bloomer reinjured his back in 2005 while "working in construction." (R. at 111.) Thus, any clinical findings relating to Bloomer's back and difficulties walking cited after the October 1995 accidents have no relevance to Bloomer's condition in December 1994. Because there is no objective medical evidence of record showing that Bloomer suffers nerve root or spinal cord compromise during the relevant time period, he did not meet or equal § 1.04. Thus, substantial evidence supports the ALJ's failure to find that Bloomer's impairments met or equaled § 1.04.

Bloomer next argues that the ALJ erred by not considering the assessment of his treating physician, Dr. Rossi. Bloomer further argues that the ALJ erred by failing to discuss the weight, if any, that he gave to Dr. Molony. Dr. Rossi's assessment was prepared more than 10 years after Bloomer's date last insured and in no way indicates

-10-

that the assessment related to the relevant time period. (R. at 85-86.) In fact, the record does not indicate that Dr. Rossi was one of Bloomer's treating physicians during the relevant time period, and, in fact, did not treat Bloomer until years later. The record shows that Bloomer saw Dr. Molony 10 months after his date last insured for complaints of back pain following a motor vehicle accident. (R. at 123.) Treatment notes reflect that Bloomer had a reduced range of motion and that he had again "[h]urt back at work and [was] progressing." (R. at 121.) Based on this, I will reject Bloomer's argument on this issue.

With regard to Bloomer's argument that the ALJ did not properly consider his allegations of pain, I find that the ALJ considered Bloomer's allegations of pain in accordance with the regulations. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about [his] pain may not
> be discredited solely because they are not substantiated by

> objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers. ...

*Craig*, 76 F.3d at 595.

In his decision, the ALJ noted that he had considered all of Bloomer's allegations of disabling pain and other symptoms. (R. at 24.) The ALJ found that there was no medical evidence in the record to show that, prior to December 31, 1994, Bloomer's back impairment resulted in loss of motor, sensation or reflexes or that it lasted for 12 continuous months. (R. at 24.) The ALJ also noted that while Bloomer testified to relatively few activities, the medical evidence did not establish that these limitations were placed on Bloomer by any physician. (R. at 24.)

For these reasons, I find that substantial evidence exists to support the ALJ's finding that Bloomer was not disabled during the time period at issue.

**PROPOSED FINDINGS OF FACT**

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding that Bloomer's condition did not meet or equal § 1.04;

2. Substantial evidence exists to support the ALJ's finding with

-12-

       regard to Bloomer's residual functional capacity; and

3.      Substantial evidence exists to support the ALJ's finding that Bloomer was not disabled under the Act between December 1, 1994, and December 31, 1994.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Bloomer's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(c) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of

-13-

the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 26th day of June 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE